## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

JAMES C. McNEILL,                      )
                                       )
          Plaintiff,                   )
                                       )
                                       )
     v.                                )          1:18CV786
                                       )
CAMERON GADDY, et al.,                 )
                                       )
          Defendants.                  )

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This matter is before the court on Defendants William L. Bullard, Nikolas Bustillos, Ronald P. Covington, Sheryl Hatcher, Pamela J. Locklear, Dean Locklear, Katy E. Poole, Whitney D. Revels, and Monica Bond's motion to dismiss, or in the alternative, motion to sever, and motion for summary judgment.[1] (Docket Entries 75 and 77.) Defendant Cameron Gaddy has also filed a separate motion for summary judgment which adopts by reference the statement of facts and arguments articulated by the above-mentioned Defendants in their memorandum in support of summary judgment. (*See* Docket Entries 81 and 82.) Plaintiff James C. McNeill filed a response in opposition to these motions. (*See* Docket Entries 87, 88.) This matter is ripe for disposition. For the following reasons, the Court will recommend that Defendants' motion to dismiss be denied and the motions for summary judgment be granted except as to Plaintiff's due process claim against Defendant Monica Bond.

---

[1] Some of the names referenced in the Complaint have been spelled incorrectly; however, the correct spellings of Defendants' names are noted above. (*See* Docket Entry 11.)

Case 1:18-cv-00786-LCB-JLW   Document 91   Filed 05/26/21   Page 1 of 29

## I. BACKGROUND

On or about September 13, 2018, Plaintiff, a *pro se* prisoner of the State of North Carolina, filed a Complaint against Defendants pursuant to 42 U.S.C. § 1983 alleging constitutional claims sounding in due process violations, denial of access to the courts, a failure to investigate grievances, retaliation, and deliberate indifference. (*See generally* Complaint, Docket Entry 2.) Plaintiff's claims arise out of incidents occurring while he was housed at Scotland Correctional Institution ("Scotland") from May 23, 2018, when Plaintiff arrived at Scotland, to September 13, 2018, the date Plaintiff filed his Complaint. (*Id.* at 22-43.)[2] The facts of these events are explained below.

First, Plaintiff alleges that upon his arrival at Scotland, Defendants Bustillos and Gaddy[3] confiscated Plaintiff's court ordered medical records, discovery materials related to legal cases, and other personal documents. (*Id.* at 22-23, 29-30.) Defendant Bustillos first discovered the documents as officials were searching and inventorying Plaintiff's property in the receiving area of Scotland. (*Id.* at 22-25.) He then confirmed with Defendant Gaddy that Plaintiff could not have the documents. (*Id.* at 22-23.) Despite Plaintiff's numerous objections and verbal protests, Defendants Gaddy and Bustillos confiscated Plaintiff's medical records due to them bearing the names of prison medical employees and other personal documents on the grounds that they displayed gang or drug-related markings. (*Id.* at 23-26.) One

---

[2] All citations in this recommendation to documents filed with the Court refer to the page numbers located at the bottom right-hand corner of the documents as they appear on CM/ECF.

[3] Plaintiff's Complaint also references Defendants FNU Vigo and Barsha Sims as participants in the illegal confiscation of his documents; however, those Defendants have been dismissed without prejudice from this action. (*See* Docket Entry 26.)

particular item that was confiscated was a "federal drug conspiracy trial chart handwritten and . . . copied out of a Don Diva Magazine in 2011 at Central Prison." (*Id.* at 26.) According to Plaintiff, said document has been in his possession since 2011, has been previously screened through the prison mail, and has been properly inventoried without issue throughout his numerous prison transfers. (*Id.* at 26-27.) Plaintiff alleges that Defendants Bullard and Dean Locklear, supervisory prison officials, were made aware of the alleged improper confiscation of all his documents but ignored Plaintiff's requests to retrieve his material and further acquiesced to the behavior of their subordinates. (*Id.* at 29-30.)

Plaintiff then alleges that in response to him speaking out against the confiscation of his medical records, Defendants Gaddy and Bustillos instituted prison disciplinary charges against Plaintiff for possessing a "Gang Chart" within his confiscated documents. (*Id.* at 27.) Plaintiff states that Defendants "us[ed] word play" to present the federal drug conspiracy trial chart as a "'Gang Chart' of sex, money, murder, [and] bloods." (*Id.*) On June 4, 2018, Plaintiff was found guilty of this disciplinary charge on and on July 3, 2018, this conviction was upheld on appeal by Defendant Monica Bond in her role as Chief Disciplinary Hearing Officer. (*Id.* at 28, 33.) Plaintiff alleges that Defendant Bond upheld his conviction despite his attempt to explain that the charge was fabricated during the hearing process. (*Id.* at 33-34.) This guilty verdict resulted in Plaintiff being placed in solitary confinement in the Segregated Housing Unit with restrictions related to visitation, employment, telephone use, mail use, and cell searches. (*Id.* at 28.) Plaintiff states that by upholding the fabricated charge, Defendant Bond knew that Plaintiff "would suffer lifelong severe restrictions and negative labeling" within the North Carolina prison system. (*Id.* at 34.)

3

Plaintiff states that he filed fifteen grievances concerning the confiscation of his documents on May 23, 2018, and alleges that Defendants Poole Hatcher, and Pamela Locklear failed to handle his grievances adequately. (*Id.* at 30-32.) Relating specifically to Defendant Poole as Head Administrator and Superintendent of Scotland, Plaintiff alleges that she failed to process Plaintiff's grievances or override the actions and decisions of subordinate prison staff. (*Id.* at 30-31.) Plaintiff further alleges that Defendant Sheryl Hatcher, as Designated Grievance Officer at Scotland, refused to process the grievances until Plaintiff was transferred out of Scotland. (*Id.* at 31.) Defendant Pamela Locklear is also named for her supervisory role in denying Plaintiff an opportunity to seek redress regarding his confiscated documents. (*Id.* at 32.)

Next, Plaintiff alleges that Defendants maliciously fabricated serious disciplinary actions against Plaintiff that were unfounded and ultimately dismissed. (*Id.* at 36-37.) On June 2, 2018 Plaintiff was escorted to the medical station where he informed the nurse that he had been suffering extreme pain due to Defendant Locklear-Jones' discontinuation of his access to an extra mattress, chair in his cell, and prescription medications in retaliation of another pending lawsuit. (*Id.* at 35.) The nurse informed Plaintiff that there was nothing further to be done because the prescriptions were discontinued and Defendant Locklear-Jones was not going to see or "do anything for" Plaintiff. (*Id.* at 35-36.) Plaintiff responded to the nurse, "Well tell her I'll see her in court if I make it through this." (*Id.* at 36.)

Plaintiff alleges that Defendant Revels, who overheard Plaintiff's conversation with the nurse, then made a false allegation to Defendant Covington that Plaintiff talked about "stabbing the nurse." (*Id.*) Defendant Covington, without investigation, then ordered the

4

removal of Plaintiff's personal property, including a mattress and bed linens from his cell and ordered Plaintiff to be strip searched and taken through the metal detector in search of a "shank." (*Id.* at 36-37.) When Plaintiff was returned to his cell, his possessions and legal property had been removed by Defendant Revels without completing an inventory form. (*Id.* at 37.) When Plaintiff's property was returned the following day, over 300 pages of this legal materials were missing. (*Id.* at 37-38.)

As a result of Defendants' actions, Plaintiff alleges that his medical condition worsened from having to sleep in a freezing cold cell on a cold steel bed. (*Id.* at 38.) Plaintiff alleges that Defendant Covington knew Defendant Revel's allegation was false or "suspect" because the accompanying guards did not corroborate the story and the disciplinary charges were dismissed on June 11, 2018. (*Id.* at 36-37.) Plaintiff alleges that Defendant Revels "hashed together [this] plot to harass and punish the Plaintiff for the existing lawsuit in this court" against Scotland employees. (*Id.* at 36.)

Fourth, Plaintiff alleges that Defendant Locklear-Jones was deliberately indifferent to Plaintiff's serious medical needs by discontinuing all his medical orders and prescribed medicines used to treat his numerous chronic pain ailments. (*Id.* at 15.) Plaintiff's complaint describes at length the medical treatment he received while in prison. (*Id.* 39-41.) At the crux of Plaintiff's complaints regarding his medical treatment is Defendant Locklear-Jones' alleged improper discontinuance of Plaintiff's medications without examination or justification. (*Id.*) Plaintiff eventually obtained new prescriptions upon his transfer to another prison facility. (*Id.* at 42-43.)

Plaintiff alleges that Defendant Pamela Locklear denied him the opportunity to seek redress not only for the confiscation of his documents, but also for the deliberate indifference to his medical needs. (*Id.* at 32, 38, 42.) Likewise, Plaintiff alleges that Defendant Poole refused to process his grievances relating to his medical needs. (*Id.* at 42.)

Plaintiff alleges that Defendants' actions violated his constitution rights and have caused him to suffer extreme and emotional distress. (*Id.* at 43, 45.) Plaintiff suffered approximately 50 days of physical pain due to Defendants' deliberate indifference. (*Id.* at 43.) Additionally, he "needed to challenge his criminal conviction" of "life without parole;" however, Defendants' illegal confiscation of his documents has caused Plaintiff significant deprivations. (*Id.*) Plaintiff seeks monetary damages as well as declaratory relief. (*Id.* at 45.)

Based upon a thorough review of the Complaint, the Court concludes that the following claims have been alleged:

1. A claim for denial of access to the courts against Defendants Bustillos, Gaddy, Bullard, and Dean Locklear regarding confiscation of Plaintiff's documents;

2. A due process claim against Defendants Gaddy, Bustillos, and Bond regarding the disciplinary charge and subsequent hearing;

3. A claim against Defendant Poole, Hatcher, and Pamela Locklear for failing to investigate or process Plaintiff's grievances;

4. A claim for deliberate indifference against Defendant Locklear-Jones for discontinuing Plaintiff's medications;[4]

---

[4] The undersigned will not specifically address this claim in the recommendation herein as Defendant Locklear-Jones has been dismissed from this action. (*See* Docket Entry 40, 43.)

5.  A claim challenging the conditions of confinement against Defendants Covington and Revels; and

6.  A claim for retaliation against all Defendants.

(*See generally* Compl.)

On January 9, 2019, Defendants Bullard, Bustillos, Covington, Gaddy, Hatcher, Pamela Locklear, Dean Locklear, Poole, and Revels filed an Answer to Plaintiff's Complaint. (Docket Entry 11.)  On April 2, 2019, Defendant Bond filed an Answer to the Complaint. (Docket Entry 20.)  On April 8, 2019, Defendant Locklear-Jones, by and through private counsel, filed an Answer (Docket Entry 21) and motion for summary judgment based upon Plaintiff's failure to exhaust administrative remedies pursuant to the Prisoner Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), regarding the claims against said defendant. (Docket Entry 22.)  The undersigned issued a recommendation granting said motion (Docket Entry 40), which the Court adopted on October 23, 2019, over Plaintiff's objection. (Docket Entry 43.)  After discovery ended, the moving Defendants filed the pending motions. (*See* Docket Entries 75, 77, 81.)

## II.  DISCUSSION

### 1.  <u>Defendants' Motion to Dismiss or in the Alternative to Sever Parties</u>

Defendants Bullard, Bustillos, Covington, Hatcher, Pamela J. Locklear, Dean Locklear, Poole, Revels, and Bond first move to dismiss this case for Plaintiff's failure to comply with Civil Procedure Rule 8. (*See* Docket Entry 84 at 3-5.)  Rule 8(a)(2) provides that a complaint "must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  This purpose is to "give the defendant fair notice of what

7

the . . . claim is and the grounds upon which it rests. . . ." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson,* 355 U.S. 41, 47 (1957)). Fair notice is provided by setting forth enough facts for the complaint to be "plausible on its face" and "raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)[.]" *Id.* (internal citations omitted). When determining whether to dismiss a complaint for failure to comply with Rule 8(a), courts have looked to various factors, including "the length and complexity of the complaint, whether the complaint was clear enough to enable the defendant to know how to defend himself, and whether the plaintiff was represented by counsel[.]" *North Carolina v. McGuirt*, 114 F. App'x 555, 558 (4th Cir. 2004) (internal citations omitted).

Here, Plaintiff's Complaint, together with exhibits and attachments spans approximately 52 pages and attempts to assert claims against 13 Defendants.[5] (*See generally* Compl.) However, the Court cannot conclude that the Complaint was so unclear such that moving Defendants were unable defend themselves, particularly given that said Defendants answered the Complaint (*see* Docket Entries 11, 20), thereafter engaged in discovery, and have now moved for summary judgment. *See Korthas v. City of Auburn*, No. 5:04-CV-537(NPM/GHL), 2006 WL 1650709, at *3 (N.D.N.Y. June 9, 2006) (unpublished) ("[T]he Defendants promptly answered both the original and the amended complaints, and in doing so, demonstrated that the complaints were adequate and/or were not unintelligible."); *Kittay v. Kornstein*, 230 F.3d 531, 542 (2d Cir. 2000) (citation omitted) (same). Finally, the Court notes

---

[5] The undersigned notes that the Complaint discusses other prison officials not named as defendants in the instant action, and references other legal actions making it somewhat difficult to decipher Plaintiff's claims.

that Plaintiff is proceeding *pro se* rather than with the assistance of counsel. Thus, Plaintiff's Complaint must be read with some degree of liberal construction. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotations and citations omitted) ("[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.").

The undersigned thus concludes that dismissal of Plaintiff's Complaint against moving Defendants with prejudice for failure to comply with Rule 8(a) would be inappropriate. Indeed, such dismissal "tends to undermine one of the policies of the Federal Rules of Civil Procedure: facilitating a decision on the merits rather than on pleading technicalities." *McGuirt*, 114 F. App'x at 559. Defendants' motion to dismiss on this ground should therefore be denied.[6] *Rush v. Am. Home Mortg., Inc.*, No. CIV.A WMN07CV0854, 2009 WL 4728971, at *4 (D. Md. Dec. 3, 2009) (unpublished) ("[U]nder the liberal pleading standards granted to a *pro se* Plaintiff, Plaintiff's Complaint is sufficient and will not be summarily dismissed on Rule 8 grounds.").

Alternatively, Defendants contend that if dismissal under Rule 8 is not appropriate at this stage of litigation, the Court should sever the case pursuant to Federal Rules of Civil Procedure 20 and 21. (*See* Docket Entry 84 at 5-7.) Rule 20(a) provides that all persons may join in one action as defendants if "any right to relief jointly, severally, or in the alternative in

---

[6] The undersigned notes that Defendants rely upon the holding in *Dillard v. Perry*, No. 5:16-CT-3329-FL, 2019 WL 1244701, at *5 (E.D.N.C. Mar. 18, 2019) (unpublished). *Dillard* is distinguishable from the instant matter in that the plaintiff there was previously directed, earlier in the matter, to file an amended complaint (*see id.* at *3), with detailed instructions on how to do so. Here, the Court did not previously instruct Plaintiff to amend or clarify his pleadings, and Defendants did not raise this issue until the summary judgment stage.

respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences" and "any question of law or fact common" to all such persons will arise in the action. Fed. R. Civ. P. 20(a). In addition, Rule 20(b) provides that the court may order separate trials or make other orders to protect a party and prevent delay, expense or prejudice. Fed. R. Civ. P. 20(b). Defendants also cite to Rule 21 which provides that "[m]isjoinder of parties is not a ground for dismissing an action[,]" but "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party." Fed. R. Civ. P. 21. The rule also permits the Court to sever any claim against a party. (*Id.*)

Though Defendants' brief does not specifically assert as much, the Court presumes, given the procedural posture of this case, that they are seeking to sever this case for purposes of trial.[7] When determining whether to sever a case for trial, the court should consider

> whether the risks of prejudice and possible confusion are outweighed by the risk of inconsistent adjudications of common factual and legal issues, the burden on parties, witnesses and available judicial resources posed by multiple lawsuits, the length of time required to conclude multiple suits as against a single one, and the relative expense to all concerned of the single-trial, multiple-trial alternatives.

*Watkins v. Hosp. Grp. Mgmt. Inc.*, No. 1:02CV00897, 2003 WL 22937710, at *11 (M.D.N.C. Dec. 1, 2003) (unpublished) (internal quotations and citations omitted). Ultimately, the decision of whether or not severance is appropriate is within the sound discretion of the Court. *Grayson Consulting, Inc. v. Cathcart*, No. 2:07-CV-02992-DCN, 2014 WL 1512029, at *2 (D.S.C. Apr. 8, 2014) (unpublished) (citation omitted).

---

[7] Of the remaining Defendants not subject to this motion to dismiss, one has moved for summary judgment (Defendant Gaddy), and the other three (Defendants FNU Vigo, Connie Locklear-Jones, and Barsha Sims) have been terminated from this action.

10

Here, the undersigned finds that severance of this case is inappropriate. As further discussed below, the Court concludes that the issues remaining for trial are narrowed such that there should be little risk of prejudice or confusion. Additionally, given the narrowed issues, resolving this matter in a single trial should be less burdensome on both parties and will appropriately conserve judicial resources. Thus, Defendants' motion to sever should be denied.

## Defendants' Motions for Summary Judgment

Defendants Bullard, Bustillos, Covington, Hatcher, Pamela J. Locklear, Dean Locklear, Poole, Revels, Bond, and Gaddy move for summary judgment in this matter. (Docket Entries 77, 81.) Summary judgment is appropriate when there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Zahodnick v. Int'l Bus. Machs. Corp.*, 135 F.3d 911, 913 (4th Cir. 1997). The party seeking summary judgment bears the initial burden of coming forward and demonstrating the absence of a genuine issue of material fact. *Temkin v. Frederick Cnty. Comm'rs*, 945 F.2d 716, 718 (4th Cir. 1991) (citing *Celotex v. Catrett*, 477 U.S. 317, 322 (1986)). Once the moving party has met its burden, the non-moving party must then affirmatively demonstrate that there is a genuine issue of material fact which requires trial. *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a fact finder to return a verdict for that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Sylvia Dev. Corp. v. Calvert Cnty., Md.*, 48 F.3d 810, 817 (4th Cir. 1995). Thus, the moving party can bear his burden either by presenting affirmative

11

evidence or by demonstrating that the non-moving party's evidence is insufficient to establish his claim. *Celotex*, 477 U.S. at 331 (Brennan, J., dissenting).

When making the summary judgment determination, the Court must view the evidence, and all justifiable inferences from the evidence, in the light most favorable to the non-moving party. *Zahodnick*, 135 F.3d at 913; *Halperin v. Abacus Tech. Corp.*, 128 F.3d 191, 196 (4th Cir. 1997). However, the party opposing summary judgment may not rest on mere allegations or denials, and the court need not consider "unsupported assertions" or "self-serving opinions without objective corroboration." *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 962 (4th Cir. 1996); *see also Anderson*, 477 U.S. at 248-49.

Defendants move for summary judgment on several grounds and have submitted Plaintiff's Offender Information Report and Infraction History in support of their motion.[8] (*See* Docket Entry 78;[9] *see also* Offender Information Report, Docket Entry 89-1; Infraction History, Docket Entry 89-2.) First, Defendants contend that they are entitled to qualified immunity because there has been no constitutional violation. (Docket Entry 78 at 7-8.) Next Defendants contend that they are entitled to summary judgment as a matter of law as to any

---

[8] After initial review of the parties' filings and arguments, the Court allowed Defendants an opportunity to supplement the summary judgment record, pursuant to Federal Rule of Civil Procedure 56(e)(1), with sufficient supporting documentation related to arguments surrounding Plaintiff's challenge to his disciplinary adjudication and the sufficiency of the evidence during his disciplinary hearing. (*See* Text Order dated 5/10/2021.) After receiving an extension of time to submit the additional documents (*See* Docket Entry 90; Text Order dated 5/18/2021), Defendants failed to file supplemental information for the Court's consideration.

[9] Defendants' original brief in support of their motion for summary judgment was filed simultaneously with their motion. (*See* Docket Entry 78.) The two exhibits referenced in the original brief were not included in the Court's filing. The support brief was again docketed to include the attached exhibits previously referenced by defense counsel. (*See* Docket Entry 89.) To avoid confusion and unless otherwise referencing the exhibits, the undersigned will refer to the Court's docket number (Docket Entry 78) referencing the original memorandum brief.

claims against them in their official capacity. (*Id.* at 8-9.) Third, Defendants in supervisory roles contend that summary judgment is warranted as to any claims against them in such capacities. (*Id.* at 9-11.) Defendants also contend that no claims can prevail against them which Plaintiff does not allege were personally depriving him of his rights. (*Id.* at 11-12.) Fifth, Defendants asserts that plaintiff cannot prevail on claims of conspiracy against Defendants.[10] (*Id.* at 12-13.) Defendants also assert additional grounds for summary judgment: (1) Plaintiff cannot maintain a claim based on failure to investigate his grievances; (2) Plaintiff's challenges to his conditions of confinement fail; (3) Plaintiff's challenge to his disciplinary adjudication fails; (4) Plaintiff is unable to show an actual injury for his claim for denial of access to the courts; (5) Plaintiff's due process claim fails; and (6) Plaintiff's claims for retaliation fail as a matter of law. (*Id.* at 13-21.) Last, Defendants assert that Plaintiff has failed to exhaust his administrative remedies prior to filing this action as required by the PLRA.[11] (*Id.* at 21-23.) The undersigned will address the arguments below.

---

[10] The undersigned does read Plaintiff's Complaint to assert a separate conspiracy claim. Thus, this argument is not further addressed herein.

[11] The PLRA requires inmates to properly exhaust administrative remedies before filing civil actions challenging the conditions of their confinement. *See Woodford v. Ngo*, 548 U.S. 81, 84 (2006); *Moore*, 517 F.3d at 725. It is well-settled by now that Section 1997e's exhaustion requirement is mandatory. *See Jones v. Bock*, 549 U.S. 199, 211 (2007); *see also Woodford*, 548 U.S. at 90-91 (stating that the PLRA requires "proper exhaustion," which "demands compliance with an agency's deadlines and other critical procedural rules"); *Anderson v. XYZ Correctional Health Servs., Inc.*, 407 F.3d 674, 676-77 (4th Cir. 2005) (citing *Porter v. Nussle*, 534 U.S. 516, 524 (2002)). Notwithstanding the due process claim against Defendant Bond, the undersigned recommends the remaining claims and Defendants be dismissed from this action with prejudice. Thus, the Court does not address the issue of exhaustion as to these Defendants any further. As to Defendant Bond, Plaintiff challenges the validity of his prison disciplinary hearing which he appealed. The North Carolina Department of Public Safety's ("NCDPS") Administrative Remedy Procedures ("ARP") rejects grievances challenging a disciplinary action. *See* N.C. Dep't Pub. Safety, Policy and Procedure Manual, Ch. G, § .0306(b)(3), https://files.nc.gov/ncdps/div/Prisons/Policy_Procedure_Manual/G.0300_08_01_13.pdf (last visited April 29, 2021). The grievance procedures are publicly available on the NCDPS website and

Case 1:18-cv-00786-LCB-JLW   Document 91   Filed 05/26/21   Page 13 of 29

## A. <u>Official Capacity Claims</u>

Defendants argue that any claims against them in their official capacities should be dismissed as a matter of law. (Docket Entry 78 at 8-9.) The undersigned agrees. The Eleventh Amendment prohibits actions in federal court by individuals against a state unless the state has consented to suit or unless Congress has lawfully abrogated the states' Eleventh Amendment immunity. *Ballenger v. Owens*, 352 F.3d 842, 844-45 (4th Cir. 2003). The doctrine of sovereign immunity under the Eleventh Amendment applies not only to actions in which the State of North Carolina is a named defendant, but also to actions against its departments, institutions, and agencies. *DeMurry v. N.C. Dep't of Corr.*, 673 S.E.2d 374, 380-81 (N.C. Ct. App. 2009). Additionally, in North Carolina, "[a]ctions against officers of the State in their official capacities are actions against the State for the purposes of applying the doctrine of [sovereign] immunity." *Green v, Kearney*, 203 N.C. App. 260, 268, 690 S.E.2d 755, 762 (2010) (citation omitted). Indeed, "[w]here [Section 1983's] provisions allow for suit against a 'person,' and in suits for money damages, neither the state nor a state agency is deemed a 'person,' [thus] this claim cannot be maintained by plaintiff against [the State]." *Savage v. N. Carolina Dep't of Corr.*, No. 5:06-CV-171-FL, 2007 WL 2904182, at *5 (E.D.N.C. Sept. 29, 2007) (unpublished). Additionally, compensatory damages are unavailable in official capacity suits under § 1983. *Biggs v. Meadows*, 66 F.3d 56, 61 (4th Cir. 1995).

Here, to the extent Plaintiff has filed suit against Defendants in their official capacities, it would be against the NCDPS and the State of North Carolina. *Green*, 203 N.C. App. at 268,

---

the Court is entitled to take judicial notice of said document. *See Fauconier v. Clarke*, 652 F. App'x 217, 219 n.4 (4th Cir. 2016).

14

690 S.E.2d at 762. Neither has consented nor waived immunity; therefore, any monetary claims against Defendants in their official capacities should be dismissed.[12] *Floyd v. N. Carolina Dep't of Corr.*, No. 1:11-CV-80-RJC, 2011 WL 1499669, at *2 (W.D.N.C. Apr. 19, 2011) ("[T]he Eleventh Amendment protects state employees acting in their official capacities from suits for damages.") (citing *Will v. Michigan Dep't of State Police,* 491 U.S. 58, 71 (1989)); *Kelly v. Maryland*, 267 Fed. Appx. 209, 210 (4th Cir. 2008) (citation omitted) ("It is now well settled that a state cannot be sued under § 1983.").

## B. **Supervisory Defendants**

Defendants also assert that Plaintiff's claims against those in supervisory roles should be dismissed. (Docket Entry 78 at 9-10.) Defendants in supervisory roles may not be held liable based upon a theory of *respondeat superior*, because *respondeat superior* generally is inapplicable to § 1983 suits. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978). However, a supervisor may be liable for the actions of a subordinate if:

> (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff;
> (2) the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices;" and
> (3) there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994). The Fourth Circuit has held that

---

[12] Although Plaintiff in conclusory fashion, states that he seeks declaratory relief, (*see* Compl. at 45), such is relief is moot as he is no longer incarcerated at Scotland. *See Rendelman v. Rouse*, 569 F.3d 182, 186 (4th Cir. 2009) ("[A]s a general rule, a prisoner's transfer or release from a particular prison moots his claims for injunctive and declaratory relief with respect to his incarceration there.").

> [o]rdinarily, [a plaintiff] cannot satisfy his burden of proof by
> pointing to a single incident or isolated incidents, for a supervisor
> cannot be expected to promulgate rules and procedures covering
> every conceivable occurrence within the area of his
> responsibilities. Nor can he reasonably be expected to guard
> against the deliberate criminal acts of his properly trained
> employees when he has no basis upon which to anticipate the
> misconduct. A supervisor's continued inaction in the face of
> documented widespread abuses, however, provides an
> independent basis for finding he either was deliberately
> indifferent or acquiesced in the constitutionally
> offensive conduct of his subordinates.

*Slakan v. Porter*, 737 F.2d 368, 373 (4th Cir. 1984) (internal citation omitted).

Here, Defendants contend that Plaintiff has proffered proof of neither deliberate indifference on the part of Defendants or tacit authorization of the conduct from the subordinates of the supervisory Defendants. (Docket Entry 78 at 11.) The complaint, however, attempts to allege the supervisory Defendants' tacit authorization of their subordinate's conduct. (*See* Compl. at 29-30.) However, the undersigned need not resolve this issue here. As further stated below, the underlying claims here implicating supervisory liability—denial of access to the courts and failure to investigate grievances—fail to establish a constitutional violation. "It is well settled that there can be no supervisory liability when there is no underlying violation of the Constitution." *Phillips v. Bailey*, 337 F. Supp. 2d 804, 807 (W.D. Va. 2004) (citations omitted). Thus, any claims based upon supervisory liability should be dismissed. *See Temkin*, 945 F.2d at 724 ("A claim . . . under section 1983 cannot be made out against a supervisory authority absent a finding of a constitutional violation on the part of the person being supervised.").

## C. **Personal Deprivation of Rights**

Defendants next contend that "Plaintiff does not allege that *each* and every Defendant committed *all* the specific constitutional violations in the complaint." (Docket Entry 78 at 11-12 (emphasis added).) Defendants' argument is unpersuasive. While it is true that an individual § 1983 claim must affirmatively show "that the official charged acted personally in the deprivation of the Plaintiff's rights[,"] *Wright v. Collins*, 766 F.2d 841, 850 (4th Cir. 1985), the Court is unaware of, nor has Defendants cited, any statute or case law requiring *all* defendants in a § 1983 action be involved in *all* the alleged unconstitutional acts in a complaint. Thus, this argument does not warrant summary judgment in Defendants' favor.

## D. **Failure to Investigate Grievances**

Defendants next contend that to the extent alleged in the Complaint, Plaintiff cannot maintain an action against Defendant Poole and others for failing to process and investigate his grievances. (Docket Entry 78 at 13-14.) Defendants are correct. Claims pursuant to § 1983 require "a plaintiff to allege facts indicating the deprivation of federal rights by one acting under color of law." *McMillan v. Vaught*, No. 1:19-CV-591, 2019 WL 8223613, at *3 (E.D. Va. Sept. 10, 2019) (unpublished) (citation omitted). "[T]he Due Process Clauses generally confer no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual." *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 196 (1989). Thus, there is "no fundamental right to a grievance system nor is there a fundamental right requiring prison administrators investigate prisoner complaints." *Mitchell v. Murray*, 856 F. Supp. 289, 294 (E.D. Va. 1994).

17

Here, as to Plaintiff's claim that Defendants failed to investigate or further process his prison grievances, there is no constitutional right requiring such acts. Thus, summary judgment should be granted as to this argument and any claims for failure to investigate or process grievances should be dismissed. *See Boose v. Adkins*, No. 3:18-CV-01480, 2020 WL 3086885, at *20 (S.D.W. Va. May 20, 2020) (unpublished) (Plaintiff "has no federal or constitutional right to a particular type of investigation or investigatory practice."), *report and recommendation adopted*, No. CV 3:18-1480, 2020 WL 3078333 (S.D.W. Va. June 10, 2020) (unpublished); *Jones v. Ervin*, No. 2:19-CV-385-RMG, 2019 WL 2241860, at *2 (D.S.C. May 24, 2019) (unpublished) (allegations that defendants "ignored [plaintiff] and failed to investigate [his retaliation claim], do not make out a § 1983 claim"); *Battle v. N. Carolina Dep't of Pub. Safety*, No. 1:17-CV-174-FDW, 2018 WL 4620619, at *8 (W.D.N.C. Sept. 26, 2018) (unpublished) ("Because there is no constitutional right to an investigation, Plaintiff has failed to state a claim for § 1983 relief against these Defendants for failure to investigate, and this claim will be dismissed.").

### E.  Challenges to Conditions of Confinement

Defendants next assert that Plaintiff's claims regarding his conditions of confinement fail because Plaintiff has not alleged, nor can he prove, a serious deprivation of a basic human need. (Docket Entry 78 at 14-16.) In *Farmer v. Brennan*, 511 U.S. 825 (1994), the Supreme Court held that the Eighth Amendment to the Constitution "imposes duties on [prison] officials who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must take reasonable measures to guarantee the safety of the inmates[.]" *Id.* at 832 (internal quotation

and citation omitted). A successful Eighth Amendment claim contains two elements: the deprivation must be, objectively, "sufficiently serious," and the prison official must have demonstrated a "deliberate indifference to inmate health or safety." *Id.* at 834. As Defendants assert, the sufficiently serious deprivation must result in "extreme" deprivation. *See Scinto v. Stansberry*, 841 F.3d 219, 234 (4th Cir. 2016) ("Only an 'extreme deprivation' is actionable under the Eighth Amendment.").

Here, even considering the facts as true, Plaintiff's temporary deprivation of limited clothing and sleeping in a freezing cold cell for approximately two days is not the type of extreme deprivation actionable under the Eighth Amendment. *See Beverati v. Smith*, 120 F.3d 500, 504 (4th Cir. 1997) (holding that 6-month exposure to vermin, human feces, unbearable heat, cold an inadequate food portions, and other conditions was not so atypical to impose significant hardship). *See also Lucas v. Lowicki*, No. CV GJH-17-1018, 2018 WL 4384154, at *5 (D. Md. Sept. 14, 2018) (unpublished) (no constitution violation for "10 days naked without a mattress, blanket and bedsheets under extremely cold cell temperature with inadequate ventilation system and unsanitary floor with excessive dust, lint particles, mold on the wall, no toiletries and shower taken, limited food, and toxic fumes"); *Wagner v. Warden*, No. CIV.A. ELH-14-791, 2015 WL 1276749, at *41 (D. Md. Mar. 19, 2015) (unpublished) (denying Eighth Amendment claim where inmate complained he was placed for two days in a cold cell without a mattress, toiletries, or running water, and with feces and urine on the floor because "the times he was allegedly placed in these conditions was brief."); *Williams v. Delo*, 49 F.3d 442, 444 (8th Cir. 1995) (no constitution violation for four days without clothes, mattress, water,

bedding, legal mail or hygienic supplies). Thus, Defendants should be granted summary judgement as to Plaintiff's claims challenging his conditions of confinement.

## F. Denial of Access to the Courts

Next, Defendants argue that Plaintiff cannot proceed on his claims for denial of access to the courts for any alleged improper confiscation of his legal material or failure to allow him to grieve. (Docket Entry 78 at 18-19.) Prisoners have a constitutional right to a "reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts" which a state may not abridge or impair. *Bounds v. Smith*, 430 U.S. 817, 821 (1977); *Hudspeth v. Figgins*, 584 F.2d 1345, 1347 (4th Cir. 1978). To establish a *prima facie* claim of denial of access to the courts, a prisoner cannot rely on conclusory allegations; instead, he must identify a specific, actual injury resulting from official conduct. *Cochran v. Morris*, 73 F.3d 1310, 1316 (4th Cir. 1996). "The injury requirement is not satisfied by any type of frustrated legal claim; the prisoner must demonstrate that his nonfrivolous post-conviction or civil rights legal claim has been frustrated or impeded." *Adams-Bey v. Rogers*, No. 3:17-CV-210-FDW, 2018 WL 2292763, at *3 (W.D.N.C. May 18, 2018) (citing *Lewis v. Casey*, 518 U.S. 343, 353 (1996)).

Here, while Plaintiff alleges that he has been hindered in his civil actions and in his ability to appeal his criminal conviction (*see* Compl. at 32, 38, 43), neither his Complaint nor his opposition to the summary judgment motions set forth sufficient details concerning actual injury resulting from the confiscation of his documents. Without greater specificity, Plaintiff's allegations that he is serving a life sentence without parole with pending criminal appeals and civils matters are insufficient for these denial of access to the courts claims to proceed. *See*

20

*Ladner v. Hull*, No. 1:11CV1290 TSE/IDD, 2013 WL 3158620, at *2 (E.D. Va. June 18, 2013) (unpublished) ("[P]laintiff failed, in both the Amended Complaint and in his opposition to the Motion for Summary Judgment, to give sufficient details concerning an actual injury."); *Pearson v. Simms*, 345 F. Supp. 2d 515, 520 (D. Md. 2003) ("Plaintiff has not alleged, much less demonstrated that the materials . . . were related to his underlying conviction or to the conditions of his confinement. Without greater specificity, plaintiff's claim fails."), *aff'd*, 88 F. App'x 639 (4th Cir. 2004). Thus, Defendants' summary judgment should be granted as to Plaintiff's claims for denial of access to the courts.

## G. Disciplinary Hearing/Adjudication Challenge

Next, Defendants assert that Plaintiff's claims regarding his disciplinary hearing and final adjudication fail. (Docket Entry 78 at 16-17, 19-20.) Plaintiff alleges that Defendants Gaddy and Bustillos initiated false disciplinary charges against him and that his due process rights were violated by Defendant Bond at the disciplinary hearing. (*See* Compl. 27-28, 33.) At the outset the Court notes that "'the mere filing of [a false] charge itself' does not constitute a cognizable claim under § 1983 if the inmate 'was granted a hearing, and had the opportunity to rebut the unfounded or false charges.'" *Delk v. Moran*, No. 7:16CV00554, 2019 WL 1370880, at *14 (W.D. Va. Mar. 26, 2019) (citing *Freeman v. Rideout*, 808 F.2d 949, 952-53 (2d Cir. 1986)). Here, the Complaint does not dispute that a hearing took place where Plaintiff presented a "written statement" and further "explained how the charge was fabricated in retaliation of him opposing the illegal confiscation" of his materials. (*See* Compl. at 28.) As

such, having both the opportunity to have a hearing and to rebut the false charge, the due process claims against Defendants Gaddy and Bustillos should be dismissed.[13]

The conclusion as to Defendant Bond, however, differs as she was the chief disciplinary officer who upheld Plaintiff's disciplinary charge. Plaintiff alleges that his due process rights were violated by essentially asserting that he was denied a right to a fair and impartial hearing by Defendant Bond, thereby challenging the validity of the hearing itself. (*See id.* at 28, 33-34.) To prevail on either a procedural or substantive due process claim, a prisoner must first demonstrate that he was deprived of "life, liberty, or property" by governmental action. *See Plyler v. Moore,* 100 F.3d 365 (4th Cir. 1996). Relevant here, a prisoner "may have a state-created liberty interest in certain prison confinement conditions," *Prieto v. Clarke*, 780 F.3d 245, 248 (4th Cir. 2015), however, to give rise to due process protection, "the denial of such an interest [must] impose[ ] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 249 (citation omitted). What constitutes "ordinary incidents of prison life" for a particular inmate is a fact-specific inquiry and depends on the inmate's "normative baseline." *Incumaa v. Stirling*, 791 F.3d 517, 527 (4th Cir. 2015), *as amended* (July 7, 2015). "Then, with the baseline established, [the Court must] determine whether the prison conditions impose atypical and substantial hardship in relation to that norm." *Id.*

---

[13] To the extent the Complaint alleges a claim for the initiation of a false disciplinary charge by Defendants Covington and Revels during a separate incident (*see* Compl. at 36-37), such claim would fail for the same reasons. Plaintiff does not allege that he was not given an opportunity to rebut the charge. In fact, he alleges that charge was dismissed. (*Id.* at 37.)

If an inmate's liberty interest is implicated, due process requires that he receive "(1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action." *Superintendent, Mass. Corr. Inst., Walpole v. Hill,* 472 U.S. 445, 454 (1985) (citing *Wolff v. McDonnell,* 418 U.S. 539, 563-67 (1974)). Additionally, there must be "some evidence" in the record to support the findings of the prison disciplinary board "from which the conclusion of the administrative tribunal could be deduced. . . ." *Id.* at 455 (quoting *United States ex rel. Vajtauer v. Comm'r of Immigr.,* 273 U.S. 103, 106 (1927)).

Here, the record does not establish what the normative baseline for Plaintiff was during the relevant time period. While it is undisputed that Plaintiff is serving a life sentence without parole (*see* Compl. at 43), it is unclear what Plaintiff's ordinary incidents of prison life were. Defendants state that "the ordinary incidents of prison life for [Plaintiff were] close custody maximum control in a single occupancy cell. This was his baseline before he was disciplined." (Docket Entry 78 at 17.) However, there is nothing in the record supporting this assertion that Plaintiff was subject to close custody maximum control in a single occupancy cell at that time prior to the disciplinary hearing.

Furthermore, the undersigned is not able to conclude as a matter of law that there is "some evidence" in the record to support the findings of Defendant Bond and the prison disciplinary board in upholding the charge against Plaintiff. Defendants contend that Defendant Bond properly relied on the reports of others that investigated the subject incident. (Docket Entry 78 at 19-20.) However, Defendants failed to submit any evidence supporting

this argument. Instead, the record before us is replete with Plaintiff's allegations that the disciplinary charges were fabricated of which Defendant Bond was aware. (*See* Compl. at 27-28, 33-34.) Defendants rely upon the holding in *Stultz v. Tripp*, No. 5:13-HC-2082-FL, 2014 WL 3955678, at *2 (E.D.N.C. Aug. 13, 2014) (unpublished). However, that court's holding that "some evidence" was sufficient to support the hearing officer's finding was based in large part of the court's review of the disciplinary hearing record. *See id.* at *1-2, 4. Here, such information is not part of the Court's record. Therefore, the Court concludes that summary judgment should not be granted in Defendant Bond's favor as there are genuine issues of material fact regarding Plaintiff's ordinary incidents of prison life at the relevant time period and the sufficiency of the evidence during this disciplinary hearing.

## H. <u>Retaliation</u>

Defendants also assert that Plaintiff's claims for retaliation fail as a matter of law. (Docket Entry 78 at 20-21.) To establish a claim of retaliation in the prisoner context, an inmate must show that the allegedly "retaliatory act violated some constitutional right of an inmate or constituted punishment for the exercise of a constitutional right." *Cochran,* 73 F.3d at 1318 (citation omitted). An inmate must provide facts demonstrating that the exercise of some constitutional right was a substantial factor motivating the retaliatory conduct. *See Wagner v. Wheeler,* 13 F.3d 86, 90-91 (4th Cir. 1993). Secondly, an inmate must show that the retaliatory conduct complained of adversely affected his constitutional rights. *ACLU of Maryland, v. Wicomico Cnty., Md.*, 999 F.2d 780, 785 (4th Cir. 1993). Undoubtedly, "[w]here there is no impairment of the plaintiff's rights, there is no need for the protection provided by a cause of action for retaliation." *Id.* Furthermore, there must be a causal

relationship between the protected constitutional activity and a defendant's conduct. *Smith v. Lytle*, No. 1:19-CV-00260-MR, 2020 WL 2557823, at *3 (W.D.N.C. May 20, 2020) (unpublished).

The Fourth Circuit has clearly stated that a plaintiff "must allege specific facts supporting the claim of retaliation; bare assertions of retaliation do not establish a claim of constitutional dimension." *Daye v. Rubenstein*, 417 F. App'x 317, 319 (4th Cir. 2011) (citation omitted). Thus, allegations which foster a "[m]ere 'temporal proximity' between the inmate's protected activity and the official's allegedly retaliatory act 'is simply too slender a reed on which to rest' a retaliation claim." *Allen v. Anderson*, No. 5:13-CT-3238-FL, 2017 WL 4126345, at *13 (E.D.N.C. Sept. 18, 2017) (citation omitted), *order corrected on denial of reconsideration*, No. 5:13-CT-3238-FL, 2018 WL 1542232 (E.D.N.C. Mar. 29, 2018), *aff'd*, 736 F. App'x 416 (4th Cir. 2018). Courts generally treat claims of retaliation in the prison context with skepticism because "[e]very act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds directly to prisoner misconduct." *Adams v. Rice*, 40 F.3d 72, 74 (4th Cir. 1994).

Here, Plaintiff's Complaint "charged that [nearly] every single action by prison officials represented either a conspiracy or a retaliation," which "[t]his extended litany of conspiratorial activity casts serious doubts on [Plaintiff's] claims." *Cochran*, 73 F.3d at 1317-18. Indeed, it is apparent that the alleged retaliatory conduct on the part of Defendants is based on conclusory, speculative assertions which Plaintiff cannot rest upon. As Plaintiff has alleged no facts nor presented any evidence beyond his conclusory statements to create a genuine issue of material fact, summary judgment should be entered with respect to this claim. *See Sumpter v. Crib*, No. CIV.A. 8:14-180-MGL, 2015 WL 3400437, at *8 n.9 (D.S.C. May 27, 2015) (unpublished)

("Plaintiff alleges that Defendants' retaliation was in response to the lawsuit Plaintiff filed against Defendants; however, Plaintiff has provided no evidence beyond his own conclusory statements to create a genuine issue of material fact.").

## I. <u>Qualified Immunity</u>

Defendants also assert that qualified immunity shields Defendants from Plaintiff's claims. (Docket Entry 78 at 7-8.) Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also Ridpath v. Bd. of Governors Marshall Univ.*, 447 F.3d 292, 306 (4th Cir. 2006) ("Qualified immunity shields government officials performing discretionary functions from personal-capacity liability for civil damages under § 1983[.]" (emphasis added)). Thus, the traditional two-step qualified immunity inquiry requires a court to determine: "(1) whether the official violated a constitutional right; and if so, (2) whether the right was 'clearly established' at the time of its violation." *Rock for Life-UMBC v. Hrabowski*, 411 Fed. App'x 541, 546-47 (4th Cir. 2010) (citation omitted). In evaluating qualified immunity, a court initially may determine whether the plaintiff has alleged or shown a violation of a constitutional right at all. *See Pearson v. Callahan*, 555 U.S. 223 (2009). Further, "[b]ecause qualified immunity is designed to shield officers not only from liability but from the burdens of litigation, its establishment at the pleading or summary judgment stage has been specifically encouraged." *Pritchett v. Alford*, 973 F.2d 307, 313 (4th Cir. 1992).

Here, setting aside Plaintiff's due process claim surrounding his disciplinary charge, Plaintiff has not demonstrated a violation of his constitutional rights as to his remaining claims. Therefore, this undersigned concludes that Defendants Bullard, Covington, Hatcher, Pamela J. Locklear, Dean Locklear, Poole, Revels, Gaddy and Bustillos are entitled to qualified immunity. *See Abney v. Coe,* 493 F.3d 412, 415 (4th Cir. 2007) (finding that "[i]f [an official] did not violate any right, he is hardly in need of any immunity and the analysis ends right then and there"); *Parker v. Burris,* 2015 WL 1474909, at *8 (M.D.N.C. Mar. 31, 2015) (finding that "the absence of evidence supporting a finding that a constitutional violation occurred satisfies the first prong of the qualified immunity analysis"), *report and recommendation adopted,* No. 1:13CV488, 2015 WL 2169148 (M.D.N.C. May 8, 2015), *aff'd,* 623 F. App'x 82 (4th Cir. 2015).

However, the undersigned is unable to conclude that Defendant Bond is entitled to qualified immunity as to Plaintiff's due process claim. As previously discussed, there are genuine issues of material fact as to whether a constitutional violation occurred. Beyond that, the summary judgment brief fails to provide any basis in law or fact for the Court to determine that Defendant Bond is entitled to qualified immunity. *Brattain v. Stanly Cty. Bd. of Educ.,* No. 1:19CV1037, 2020 WL 6364718, at *6 (M.D.N.C. Oct. 29, 2020) (unpublished) ("[D]efendant . . . bears the burden of proof on the question of whether the right in question was clearly established at the time of the alleged misconduct.") Thus, she should not be entitled to qualified immunity.

## III. CONCLUSION

For the reasons stated herein, Defendants' motion to dismiss and/or sever should be denied, and their motions for summary judgment should be granted in part and denied in part. Plaintiff has filed an opposition brief and declaration in response to the motions (Docket Entries 87, 88) which the Court has considered in the recommendation herein. Plaintiff states that Defendants have not filed a statement of material and/or disputed facts with their motion pursuant to local rules, and Defendant Gaddy has not filed a motion. (Docket Entries 87, 88.) However, Defendant Gaddy did file a summary judgment motion and brief, pursuant to Federal Rule of Civil Procedure 10(c), adopting the statement of facts, legal standards and arguments based on law contained in the memorandum brief of the remaining movants. (*See* Docket Entry 82.) Additionally, the Local Rules do not require that a summary judgment brief contain a statement of material and/or disputed facts. Rather, the movant "shall set out a statement of the nature of the matter before the Court, a statement of facts, and a statement of the questions presented" along with "the elements that it must prove (with citations to supporting authority), and the specific, authenticated facts existing in the record or set forth in accompanying affidavits that would be sufficient to support a jury finding of the existence of those elements." M.D.N.C. L.R. 56.1(d). To the extent Defendants failed to support their argument with law or fact, it is noted herein.

Beyond that, Plaintiff's opposition filings largely restate the allegations in his Complaint. His self-serving declaration is insufficient to create a genuine issue of material fact for the claims recommended herein for dismissal. *Larken v. Perkins*, 22 F. App'x 114, 115 n.1 (4th Cir. 2001) (unpublished) ("[Plaintiff] filed only his own, self-serving affidavit containing

conclusory assertions and unsubstantiated speculation, which the district court properly found to be insufficient to stave off summary judgment."); *Evans*, 80 F.3d at 962. Accordingly,

**IT IS HEREBY RECOMMENDED** that Defendants William L. Bullard, Nikolas Bustillos, Ronald P. Covington, Sheryl Hatcher, Pamela J. Locklear, Dean Locklear, Katy E. Poole, Whitney D. Revels, and Monica Bond's Motion to Dismiss or in the Alternative, Motion to Sever Parties (Docket Entry 75) be **DENIED**.

**IT IS FURTHER RECOMMENDED** that Defendants' Motion for Summary Judgment (Docket Entry 77) be **GRANTED IN PART** to the extent that all claims against Defendants William L. Bullard, Nikolas Bustillos, Ronald P. Covington, Sheryl Hatcher, Pamela J. Locklear, Dean Locklear, Katy E. Poole, and Whitney D. Revels be dismissed, and **DENIED IN PART** as to Plaintiff's Due Process claim against Defendant Monica Bond.

**IT IS FURTHER RECOMMENDED** that Defendant Cameron Gaddy's Motion for Summary Judgment (Docket Entry 81) be **GRANTED** and all claims against him be dismissed.

_____
Joe L. Webster
United States Magistrate Judge

May 26, 2021
Durham, North Carolina

Case 1:18-cv-00786-LCB-JLW   Document 91   Filed 05/26/21   Page 29 of 29